**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Wells Fargo Trust Company, National Association, not in its individual capacity but solely as owner trustee under a trust agreement for the benefit of Willis Engine Structured Trust VIII <br><br> Plaintiff, <br><br> v. <br><br> CALC Global Leasing Limited, ZF Ireland Aircraft 110 Limited <br><br> Defendants. | 1:26-cv-01204-LJL |

**STIPULATED ORDER ESTABLISHING PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

The procedures and protocols outlined in this Stipulation and Order for ESI Protocol (the "Stipulation") govern the production of electronically stored information ("ESI") by Plaintiff and Defendants (collectively, the "Parties" and each a "Party") in the above-captioned action (the "Litigation"). The Parties to this Stipulation will take reasonable steps to comply with these agreed-upon procedures.

## A. GENERAL PROVISIONS

1. The proportionality standard set forth in Fed. R. Civ. P. 26(b) applies to ESI information. To further the application of the proportionality standard, requests for production of ESI and related documents should be reasonably targeted, clear, and as specific as practicable.

2. The Parties will meet and confer to discuss any issues arising with respect to discovery in this case. A Party may bring any disagreement to the Court for resolution in accordance with Judge Liman's Individual Practices in Civil Cases.

3.      The Parties have taken reasonable steps to preserve all ESI and related documents, and agree that preservation of potentially relevant ESI and electronically stored documents will be reasonable and proportionate.

4.      Procedures for redactions and for the handling of materials subject to claims of attorney-client privilege, attorney work-product, confidentiality, or other privilege/doctrine shall be set forth in the Protective Order, except as otherwise expressly set forth in this Protocol.

5.      A Receiving Party may challenge any claim of privilege at any time after the document or a privilege log identifying the document subject to such redaction is produced. A Receiving Party does not waive its right to challenge a redaction by electing not to challenge promptly after the subject document or privilege log identifying it has been produced.

## B.  DEFINITIONS.

**"Document"** means all written, recorded, or graphic material. The term "document" includes Hard-Copy Documents, Electronic Documents, and ESI.

**"Electronic Document or Data"** means documents that are in electronic form at the time of collection.

**"Electronically Stored Information" or "ESI"** means all originals and all copies of electronic mail ("e-mail"); all originals and all copies of communications sent via instant messaging services, including but not limited to Microsoft Teams, Zoom, WeChat, WhatsApp, and iMessage, all originals and all copies of communications sent via short message service ("SMS");  activity listings of electronic mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in progress); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and

outlines; operating systems; source code of all types; image files including JPG or JPEG, TIFF, PICT, and BMP; PDF files, batch files in any format, including ASCII, XML or CSV format; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragments. ESI includes any and all information stored in or on hard disks, floppy disks, CD and DVD disks, external hard drives or their equivalent, portable storage devices including USB or FireWire drives; magnetic tapes of all kinds and computer chips (including EPROM, PROM and ROM). ESI also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data, to the extent such information exists.

**"Load File"** is an electronic file that can assist in loading an electronic production set into a receiving Parties' document review platform.

**"Metadata"** are information embedded in or associated with an electronic document that are generated automatically by the operation of a computer or other information technology system when the document is created, modified, transmitted, deleted, or otherwise manipulated.

**"Native Format"** means the original format of a document in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xlsx file.

**"OCR"** means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software

**"Producing Party"** means a Party (or non-party that avails itself of this Order) that produces ESI in the Litigation.

**"Receiving Party"** means a Party to whom ESI is produced.

### C.  STANDARD FOR ESI DISCLOSURES.

**1.      Scope of ESI Subject to this Protocol:**

(a)      The Parties agree that this ESI Protocol pertains to any and all e-mails and digitally stored information on the Parties' computer, network, cloud storage, and mobile devices whether stored on one or more of the Parties' computer(s), network(s), cloud storage, or mobile device(s), concerning all claims and defenses asserted in this matter generated between July 1, 2023 and the present.

(b)      The Parties agree that they will each make the required diligent effort in compliance with their respective obligations under Rule 34 of the Federal Rules of Civil Procedure to produce discoverable materials irrespective of the within protocols.  The Parties agree that these protocols in no way limit such obligations.  The Parties further agree that the inclusion of search terms is merely an aid and not a limitation as to the scope of materials that are required to be produced. For the avoidance of any doubt, the Parties expressly agree that they are obligated to produce discoverable material responsive to a discovery request even where the material does not contain any of the search terms.

**2.      General Production Format**

(a)      The Parties agree that, subject to the exceptions noted below, all documents, whether stored as paper or ESI, will be produced by both Parties as single-page, black & white TIFF files (or in JPEG high quality format for color images, for document types that the Parties agree to produce in color) along with corresponding metadata, as further described herein. A Party may request that a document produced in black & white be re-produced in native format, if applicable, and such a request shall not be unreasonably denied.

(b)    The Parties agree to produce spreadsheet documents that are presently maintained in native format (*e.g.*, Microsoft Excel) in that format and a corresponding document level text file. When a document or file is produced in native format, a placeholder TIFF file will be provided stating that the document or file has been produced in native format and identifying the Bates number of the document or file. If any documents produced in native format are printed, in whole or in part, for any reason, the Party making the printout shall affix to every page of the printout the bates number associated with the document and any applicable confidentiality designations.

3.    **Text Extraction, OCR, and Unicode Compliance**

(a) Extracted text should be provided for all documents, except for documents that originated in hard-copy format. OCR should be provided for documents that do not have extracted text or in the case that a document is redacted.

(b) All text (both extracted and OCR) should be produced as document level text files named after the beginning Prod Bates Beg, with the relative path to the text file appearing in the TEXTLINK file in the .DAT file.

(c) All text (both extracted and OCR) and Metadata should be produced Unicode compliant (UTF-8).

4.    **Non-Standard Electronic Files**

(a) Production of non-standard electronic files — including, but not limited to, database files (*e.g.*, Microsoft Access, .MDB, .SQL), source code, CAD drawings, large oversized documents, and transactional data — should be discussed with the receiving party in advance of production to determine the optimal production format.

5.    **Data Load File Specifications**

(a) An ASCII delimited data load file should be provided that accounts for every document

in the delivery. The data load file should use standard Concordance delimiters (Comma, Quote, Newline in ASCII format). The first record should contain field names corresponding to the data order, and all date fields should be produced in MM/DD/YYYY format with no incomplete dates. The data load file name should mirror the delivery volume name with a .DAT extension (*e.g.,* ABC001.DAT), and volume names should be consecutive (*e.g.*, ABC001, ABC002).

(b) A carriage-return line-feed shall be used to indicate the start of each new record. Single-choice fields shall contain only one value. Multi-choice field values shall be separated using a semicolon. Load files shall not span across multiple pieces of media (*e.g.*, CDs, DVDs, hard drives); a separate volume shall be created for each piece of delivered media.

### 6.    File Directory Structure and Media Labeling

(a) The root folder on delivery media should be labeled after the delivery volume, and within each root folder should be four sub-folders labeled "DATA" "IMAGES," "NATIVES," and "Text."  There should be no more than one thousand files delivered to a particular sub-folder; when applicable, sub-folders should be created and labeled with an incrementing zero-padded number beginning at zero.

(b) Every delivery production volume should be labeled with the producing party's contact information; a case reference caption; delivery date; volume name; number of document records; number of images; Bates range(s) produced; and, if applicable, an incrementing media number (*e.g.*, DVD 1 of 2).

### 7.    Native File Requests

(a)    If a Party reasonably believes it necessary to obtain native versions of specific documents produced by the other Party, that Party may request the native file. Agreement to produce a native file will not be unreasonably withheld.

**8.** **Image Load File Specifications**

(a)       Images should be produced as black and white, Group IV, single bit, single page TIFFs, or single page color/grayscale JPGs, at 300 DPI.  The TIFF file name should be the same as the page Bates/control number, with no special characters or embedded spaces in file names. Original document orientation should be maintained (portrait to portrait, landscape to landscape), with special handling noted for file types such as PowerPoint with speaker notes.  Image load files should be in Opticon format (.OPT file), and every image in the delivery volume should be contained in the image load file.  Load files should not span across media (*e.g.*, CDs, DVDs, hard drives); a separate volume should be created for each piece of media delivered.  All images must be assigned a Bates/control number that is unique across the entire production, maintains a constant length, contains no special characters or embedded spaces, and is sequential within a given document.    Wherever possible, every TIFF image shall have its assigned Bates number electronically branded onto the image, placed so as not to obscure any source document information. No other legend or stamp should be placed on a TIFF image unless the document is designated as confidential or privileged, in which case an appropriate confidentiality or privilege legend may be branded on the image in a non-obscuring location.

**9.** **Hard Copy Documents**

(a) Hard copy documents shall be scanned to single-page TIFF Group IV format (300 DPI resolution) with corresponding searchable OCR text and be logically unitized. The file name for the TIFF image shall be the Bates/PageID Number. Scanned documents shall also be converted into searchable text using optical character recognition (OCR), extracted, and saved as a text file named with the Bates/PageID Number.

(b) Distinct Documents should not be merged into a single file, and single Documents should not be split into multiple records.  In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs), the physical organizational divider, any labels, and the Documents that follow should also be scanned, and the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

(c) All hard copy Documents shall include at a minimum the following Metadata fields: BegBates, EndBates, BegAttach, EndAttach, Custodian, Confidentiality, TextPath, and Redacted. OCR will also be provided, if reasonably available.

### 10.    <u>De-Duplication</u>

(a) The Parties may remove exact duplicate Documents (*i.e.,* identical copies of the same Document), including, but not limited to, E-mail, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. ESI that is not an exact duplicate may not be removed. If a Party chooses to remove exact duplicate Documents, that Party:

(i)    will perform de-duplication according to the MD5/SHA-1 hashing method and identify the custodians of de-duplicated Documents as part of the Metadata fields set forth in Exhibit A;

(ii)    will perform de-duplication only at the Document family level so that attachments are not de-duplicated against identical stand-alone versions of such Documents, and vice versa, although each family member shall be hashed separately for purposes of populating the "Hash Value" field in Exhibit A;

(iii)    will not disassociate attachments to E-mails, Instant Messages, or other Documents from the parent E-mail, Instant Message, or Document, even if they are exact duplicates of another Document in the production; and

(iv)    will not eliminate paper Documents as duplicates of responsive ESI.

(b) Hard copy documents will not be deduplicated against ESI.

**11.    Email Threading**

(a) The Parties may utilize email threading technology in their review to thread email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread (Inclusive Emails).

(b) Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the most inclusive message. Only email messages for which the parent document, all attachments, and sender/recipients are contained in the most inclusive message will be considered less inclusive email messages that need not be produced.

(c) Upon reasonable request, the producing party will produce a less inclusive copy.

**12.    Metadata**

(a)    The Parties agree that the mutual productions, with the exception of redacted documents, should include a load file with the following "metadata" fields:

| Field Name | Field Description | File Type |
|---|---|---|
| BegBates | Beginning production number for a given file/document. | All |
| EndBates | Ending production number for a given file/document | All |

| Field Name | Field Description | File Type |
|---|---|---|
| BegAttach | Production number of first page of parent. | All |
| EndAttach | Production number of last page of last attachment. | All |
| Custodian | The custodian(s) from whom the documents were collected, to the extent such information is available. | All |
| Custodian – All | Name of all individuals that possessed a particular document (for global de-duplication purposes only) | All |
| Confidentiality | Any confidentiality designation assigned by the producing party to the document. | All |
| Author | Author of the document, to the extent such information is available | All |
| Record Type | Electronic record type (*e.g.*, Email, Email Attachment, EDoc., Hard Copy) | All |
| Doc_Ext | Document's file extension (*e.g.*, .pdf, .doc., .docx., xls., xlsx., txt., Ppt., pptx.). | Electronic Documents |
| DateMod | Last date document modified. | Electronic Documents |
| DateCreated | Date document created. | Electronic Documents |
| Date Received | Date document was received MM/DD/YYYY. | Electronic Documents |
| Time Created | Time the document was created  (in UTC) | Electronic Documents |
| Time Last Modified | Time the document was last modified  (in UTC) | Electronic Documents |
| Time Received | Time document was received HH:MM:SS (in UTC). | Electronic Documents |
| All Source File Paths | Original file path location of the file | All |

| Field Name | Field Description | File Type |
|---|---|---|
| Redact | Indicates whether there are any redactions assigned by the producing party to the document (yes/no field). | All |
| MD5 Hash | MD5 Hash Value used for authentication and de-duplication | All |
| Filename | Name of underlying file. | Electronic |
| From | Sender. | Email |
| To | Recipients. | Email |
| CC | Carbon copy recipients. | Email |
| BCC | Blind carbon copy recipients. | Email |
| Subject | Subject line of the email. | Email |
| Date Sent | MM/DD/YYYY. | Email |
| Time Sent | HH:MM:SS (in UTC). | Email |
| TextPath | Path to text data for document. | All |
| Parent Document ID | Populated only for email attachments; this field will display the image tag field value for the attachment's parent email. | Email |
| Native_Link | Link to native document, if document produced | Documents produced in native format. |

## 13.    Document Family Relationships

(a)    Parent-child relationships (the association between an attachment and its parent document) must reasonably be preserved in such a way that a document and any attachments to that document are produced in the same production set and the relationships identifiable.

- 11 -

(b)      Responsive and non-privileged e-mail attachments shall be produced, and Bates numbered consecutively subordinate to the "parent" e-mail or other parent items so that the family (parent/child) relationship is maintained.

**14.      Confidentiality**

(a)      The terms of the Protective Order to be entered governing production and treatment of confidential information in this action will also govern all productions pursuant to this ESI Stipulation.

**15.      Search Methodology**

(a)      Within ten (10) days from the Parties executing this Agreement, each producing party shall identify the custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, current or last-known title, connection to this instant litigation, and the type of the information under his/her control.

(b)      Within ten (10) days from the Parties executing this Agreement each requesting party shall submit to the producing party a list of search terms to be used by the producing party for ESI.

(c)      The Parties reserve their right to request, at any time prior to the close of discovery, the inclusion of additional custodians and/or search terms.

(d)      Each Party will identify for the other Party any disputed search terms.  Any Party disputing a search term shall then provide the other Party with a written explanation as to why the search term is disputed.

(e)      Each Party shall work with their respective vendor(s) or litigation support team to determine if the proposed search terms generate an unreasonably high number of hits or false positives from the collections made from the custodians. The Parties agree to negotiate in good

faith if an agreed-upon search term results or is likely to result in an excessive number of hits and/or if an agreed-upon search term results in a substantial number of "false positive" hits.

(f)       ESI containing the agreed to Search Terms shall be reviewed for potential production by the Parties. The Parties recognize and acknowledge that certain files initially captured through the use of the agreed to Search Terms may be privileged, non-responsive, or irrelevant. The Parties therefore agree that the files captured through the Search Terms are subject to a subsequent review by the Parties, prior to production, for privilege, responsiveness, and relevancy. Documents withheld or redacted on the basis of privilege, including attorney work-product, shall be identified in a log. Documents withheld on the basis of non-responsiveness or irrelevancy need not be identified in a log.

(g) Without limiting the general dispute resolution procedures set forth in Section A.2, the following specific procedures apply to search term and custodian disputes arising under Section 13:

(i) If a Party disputes a proposed search term or custodian, it shall provide the other Party with a written explanation of the basis for the dispute within ten (10) days of receiving the other Party's proposed search terms.

(ii) Within ten (10) days of receiving such written explanation, the Parties shall meet and confer in person or by telephone in a good faith effort to resolve the dispute.

(iii) If, after the meet and confer, the dispute remains unresolved, any Party may raise it with the Court in accordance with Judge Liman's Individual Practices in Civil Cases.

16.     **Technology Assisted Review (TAR) / Predictive Coding**

(a) To the extent that the Parties rely on Technology Assisted Review ("TAR") in the search for, collection and review of ESI, the Parties shall confer regarding search methodology and criteria to achieve proportionality in ESI discovery, and also shall discuss whether to use computer-assisted search methodology to facilitate pre-production review of ESI to identify information that is beyond the scope of discovery because it is attorney-client privileged or work product protected.

(b) If the producing party intends to use TAR or similar advanced analytics as a substitute for attorney responsiveness review, the parties agree to meet and confer in good faith to attempt to reach agreement about the technology and process that a producing party proposes to use to identify responsive ESI and a statistically sound methodology to determine the recall rate and other measures of the effectiveness of the tool and processes in identifying responsive documents. The producing party shall make disclosures regarding its tools and processes necessary to make the meet and confers meaningful and for the requesting party to negotiate on an informed basis.

(c) If, prior to commencement of negotiations over search terms, a producing party intends, or is likely, to use both search terms and TAR (or similar advanced analytics), it shall notify the requesting party prior to commencement of search term negotiations. If a producing party decides to employ TAR or similar advanced analytics during, or after the conclusion of, negotiations over search terms, it shall promptly notify the requesting party before commencing any review.

16.     **Known Responsive Materials Must be Produced:**

(a)     Documents and ESI known to the Parties to be non-privileged and responsive to a discovery request and/or relevant to the litigation shall be produced without regard to the collection and identification methods agreed upon by the Parties unless a good faith objection has been made,

including, but not limited to, that production of such materials would be unreasonably burdensome, in which case, the Parties shall meet and confer and raise any disputes with the Court.

(b)    The Parties have a continuing obligation to identify any additional custodian who may have custody of information relevant to the Litigation.

### 17.    **Privilege Log**

(a) Each Producing Party shall produce a privilege log ("Privilege Log") identifying all Documents and ESI withheld from production, in whole or in part, on the basis of any claim of attorney-client privilege, attorney work product protection, common interest privilege, joint defense privilege, or any other applicable privilege or immunity.

(b) Consistent with Local Civil Rule 26.2(c), the Parties will meet and confer about the format of the Privilege Logs used in this Litigation.

(c) A Receiving Party wishing to challenge an entry or category on a Privilege Log shall provide the Producing Party with written notice identifying the specific log entries or categories at issue and the basis for the challenge. Within ten (10) business days of receipt of such notice, the Parties shall meet and confer in a good faith effort to resolve the dispute. If the dispute cannot be resolved, the Parties shall submit the matter to the Court in accordance with Judge Liman's Individual Practices in Civil Cases.

### 18.    **Inadvertent Production**

(a)    The Parties agree that any inadvertent failure to designate information with one of the designations described in the Protective Order (including any amendments to that Order) shall not be deemed a waiver of, nor prejudice to, any applicable designation with respect to the confidentiality of such information or document(s), provided that the Producing Party notifies the Receiving Party in writing promptly after discovery of such inadvertent failure to designate. Once

a Receiving Party has received notice of the inadvertent failure to designate pursuant to this provision, the receiving party shall treat such discovery information as the appropriately designated level pursuant to the terms of the Protective Order.

(b)     The Parties agree that any inadvertent production of material over which the Producing Party claims attorney-client, attorney work product, common interest, joint defense privilege, or any other applicable privilege or immunity designation, shall not be deemed a waiver of that claim of privilege, provided that the Producing Party notifies the Receiving Party in writing promptly after determining that privileged information has been produced. Once a Receiving Party has received notice of the inadvertent production, the Receiving Party shall within five (5) business days comply with Federal Rule of Civil Procedure 26(b)(5)(B).

(c) Nothing in this Stipulation shall prevent the Receiving Party from challenging the propriety of the attorney-client, attorney work product, common interest, joint defense privilege, or any other applicable privilege or immunity designation (based on information independent of the content of the asserted privileged materials).

### D.   <u>RESERVATION OF RIGHTS.</u>

(a)     By agreeing to an ESI Protocol, the Parties do not forfeit any possible discovery objections. If unanticipated events require a change to the agreed-upon ESI procedure, the Parties will timely notify the Court of such changes.

(b)     By preserving information for the purpose of the Litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege. Nothing in this Protocol shall be interpreted to require the disclosure of irrelevant information. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI except as expressly provided herein. In addition, nothing in this Protocol shall

eliminate or alter any Party's obligation to retain native format copies, including associated metadata, of all documents produced in the Litigation, together with the original hard copy documents for all paper discovery produced in the Litigation.

       (c)     This Stipulation shall apply only to documents produced after the date of its entry.

       (d)     This Stipulation may be revised or amended upon written agreement by the Parties.

**IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts and facsimile signatures shall be deemed originals for the purpose of filing.

Date: June 23, 2026

| | |
|---|---|
| /s/*Jeffrey Ellis* | /s/*Jacqueline L. Chung*[1] |
| Jeffrey Ellis | Jacqueline L. Chung |
| Michael A. Hession | Leili A. Saber |
| David F. Knapp | |
| | White & Case LLP |
| CLYDE & CO US, LLP | 1221 Avenue of the Americas |
| 2 Grand Central Tower | New York, New York 10020 |
| 140 East 45th Street | Tel: (212) 819-9200 |
| 26th Floor | jacqueline.chung@whitecase.com |
| Tel: (212) 710-3900 | leili.saber@whitecase.com |
| david.knapp@clydeco.us | |
| jeff.ellis@clydeco.us | *Attorneys for Plaintiff Wells Fargo Trust* |
| michael.hession@clydeco.us | *Company, National Association, not in its* |
| | *individual capacity but solely as owner trustee* |
| *Attorneys for Defendants CALC Global* | *under a trust agreement for the benefit of Willis* |
| *Leasing Limited and ZF Ireland Aircraft* | *Engine Structured Trust VIII* |
| *110 Limited* | |

---

[1] Electronic signatures used by permission granted June 22, 2026.

SO ORDERED:

LEWIS J. LIMAN
United States District Court Judge

Dated: June 24, 2026